COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Clarence ROGERS et al., Appellees.

Court of Appeals of Kentucky.

Nov. 19, 1965.

Robert Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Deddo G. Lynn, Dept. of Highways, John E. Smith, Dept. of Highways, Lexington, for appellant.

E. F. Prichard, Jr., Frankfort, Clay Shackelford, Shackelford, Burnam & Thompson, Richmond, for appellees.

CLAY, Commissioner.

█ This is a condemnation case, tried prior to our decision in Com., Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844, in which the jury awarded the landowners $7,500 for land taken and $20,000 as damages to the remainder. The Commonwealth appeals principally on the grounds that the damages were excessive and were based upon incompetent evidence. We agree.

The property involved is an eight-acre tract of land in Madison County. It is divided and devoted to two entirely distinct and different uses. Facing Kentucky Highway 52 (not here involved) is a substantial residence with an extensive backyard enclosed by a rail fence. Beyond the fence to the rear are some buildings which comprise a sausage plant operated by the landowners.

The property taken by the Commonwealth is less than an acre from the rear of the property behind the sausage plant. This consisted of a strip 40 to 50 feet in width on which was built a fill for a new highway. In taking this strip, the Commonwealth removed a smokehouse, a fuel tank, some fencing, and 12 feet from the back of an 80 foot long holding pen for hogs.

The landowners' witnesses placed values up to approximately $8,000 on the land and improvements taken, and estimated damages ranging from approximately $42,000 to $63,000 to the remainder. (The entire eight-acre tract was listed for tax purposes at $7,500.) The Commonwealth objects to a major portion of this appraisal testimony on many grounds, including unfamiliarity of the witnesses with the property involved, references to irrelevant factors, and the absence of supporting factors upon which to base the opinions. We will not go into these matters specifically because one objectionable feature impairs the competency of most of this testimony.

█ It is clear from reading this record that the appraisal evidence offered by the landowners relating to damages was based almost entirely upon the injury to appellees' sausage business by reason of the taking. These witnesses obviously considered the sausage plant a profitable and going concern and implicit in their testimony was the probable loss of business resulting from reduction of the plant area and the removal of some improvements. An example of typical testimony in this case is the following question directed to one of appellees: "Does that decrease the market value of your *sausage plant?*" (Our emphasis.) (Answer, "Very much.")

We have, of course, held time and time again that business losses resulting from condemnation are not compensable. Hend-

erson v. Lexington, 132 Ky. 390, 111 S.W. 318, 22 L.R.A.,N.S., 20; City of Newport Municipal Housing Commission v. Turner Advertising, Inc., Ky., 334 S.W.2d 767; Com., Dept. of Highways v. Smith, Ky., 358 S.W.2d 487; Com., Dept. of Highways v. Fultz, Ky., 360 S.W.2d 216; Com., Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844; Com., Dept. of Highways v. Eubank, Ky., 369 S.W.2d 15; Com., Dept. of Highways v. Fister, Ky., 373 S.W.2d 720; Com., Dept. of Highways v. Ray, Ky., 392 S.W.2d 665. The very large damage estimates of these witnesses can be attributed only to the use of this improper factor. The verdict cannot stand on such evidence.

■ One other item of evidence requires consideration. A witness testified to an offer the landowners had received for their property at a public auction. This offer was inadmissible. Commonwealth, by State Highway Commission v. Combs, 229 Ky. 627, 17 S.W.2d 748; Brock v. Harlan County, 297 Ky. 113, 179 S.W.2d 202; Com., Dept. of Highways v. Raleigh, Ky., 375 S.W.2d 384.

■ The unreliability of this auction bid is made more manifest by reason of the character of property here involved, which leads us to a matter of importance to all parties on a retrial. This property is unique in that it is devoted to two entirely different uses, which from the standpoint of the ordinary buyer would be incompatible. As before mentioned, the front part of the tract is occupied by an attractive residence with accompanying yard, trees and landscaping. The rear portion of the lot is devoted to a commercial enterprise which bears no useful relationship to the residence. As a matter of fact, this business usage would tend to impair the value of the residential area, and vice versa.

Considering the practical aspects of the problem, which always play a part in our rules of evidence, it would appear almost impossible to fix a fair market value for this land either before or after the taking, when considered as a unit. To the hypothetical buyer who wished to live on the premises and operate a sausage business, the property would have much greater value than it would have to a buyer who did not wish to use the land in this dual capacity. This disparity in possible values to different kinds of buyers is reflected by the wide divergence of appraisals in this case. The witnesses simply had no adequate guide to the fair market value of the whole tract (either before or after) when devoted to two such unrelated uses. We think this is illustrated by the following statement of one of the expert witnesses:

"No one is going to buy the house for what it is worth unless he is planning to go into the sausage business, where he can have both together and have his business, and it would be hard to find anyone to buy a home there without the plant, it has hurt both places, very much so."

This witness was undertaking to prove that damage to the sausage plant "hurts the market value of the house", but it is obvious from his statement that it was the incompatibility of the two uses of the property which "hurt" the before as well as the after value.

■ The difficulties above discussed have led to the development of the rule that a landowner may not rightfully claim damages to his remaining land, even though contiguous, when the taking affects a parcel devoted to a special use unrelated to the remainder. See Nichols on Eminent Domain, 3rd Ed., Vol. 4, section 14.31(1), page 728; Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211; United States ex rel. Tennessee Valley Authority v. Indian Creek Marble Co., D.C.Tenn., 40 F.Supp. 811; Cameron v. Chicago, M. & St. P. R. Co., 51 Minn. 153, 53 N.W. 199; Board of Supervisors of Monroe County v. Sherlo Realty, Inc., 32 Misc.2d 579, 224 N.Y.S.2d 244. This Court has considered the implications of the rule where a road separated two parcels of land. Com., Dept.

of Highways v. Slusher, Ky., 371 S.W.2d 851. The circumstances of the present case demand its application.

It is true that one of the landowners testified that damaging the sausage plant damaged his residence, but as explained by a qualified appraisal witness, this simply could not be so. Obviously the owner was considering only how the taking affected him personally and he was duplicating damages which the "different use" theory was adopted to avoid. See the Cameron case cited above. Another witness testified along the same lines as the landowner, but did not justify his conclusion. The pictures in the record demonstrate more eloquently than words that taking a strip of land from behind the sausage plant, thereby removing a portion of the hog pen, could not possibly lessen the value of the parcel devoted to residential use.

■ Returning to the auction bid offer, for the reasons above outlined and others, it would not constitute a fair basis of market value. The landowners attempted to introduce this bid to prove after value of the whole tract. It would have been just as unfair to the landowners if the Commonwealth had introduced an offer to prove before value. We are inclined to believe that inconsistent uses of the property tend to lessen both the before and after values of the tract when considered as a unit. In any event, offers could differ widely depending upon whether a buyer planned or did not plan to operate a sausage plant in connection with his residence. This is the type of case in which the portion of the property affected by the condemnation, devoted to a special use independent of and foreign to the use of the other portion, should be valued separately. Consequently on a new trial the before and after values of the land, exclusive of that area devoted to residential use, should be used as the basis upon which damages are awarded.

The judgment is reversed for proceedings consistent with this opinion.